# In the United States District Court
## for the Southern District of Georgia
## Brunswick Division

CHARLES PACKARD,                    *
                                    *
        Plaintiff,                  *
                                    *
    v.                              *           CV 215-087
                                    *
TEMENOS ADVISORY, INC. and          *
GEORGE L. TAYLOR,                   *
                                    *
        Defendants.                 *

## ORDER

This matter comes before the Court on two fully briefed motions: a Motion to Dismiss (dkt. no. 5) filed by Defendant George L. Taylor ("Taylor") and a Motion to Remand (dkt. no. 25) by Plaintiff Charles Packard ("Plaintiff"). Upon due consideration, Taylor's Motion to Dismiss (dkt. no. 5) is **DISMISSED in part** and **DENIED in part**: the Motion is **DISMISSED as moot** as it relates to the sufficiency of service of process, and it is **DENIED** as to its request for dismissal on personal-jurisdiction grounds. Additionally, Plaintiff's Motion to Remand (dkt. no. 25) is **DENIED**.

### FACTUAL BACKGROUND

Plaintiff is a resident of Glynn County, Georgia. Dkt. No. 1, pp. 7-10 ("Compl."), ¶ 1. Defendant Temenos Advisory, Inc.

("Temenos") is a Connecticut corporation that is licensed to do business in the State of Georgia, with Taylor listed as its registered agent for service of process at an address in Glynn County, Georgia. See id. at ¶¶ 2, 4. Although Taylor resides in Connecticut, Temenos and Taylor (collectively, "Defendants") have maintained a principal office at the Glynn County, Georgia, address since at least July 2010. See id. at ¶¶ 3-5.

According to Plaintiff, Defendants entered into a verbal employment contract with him in July 2010. Id. at ¶ 5. Pursuant to the alleged contract, Plaintiff worked for Defendants as a financial advisor, and Defendants compensated him with allowances for his expenses, club memberships, health insurance, and a percentage of the revenue from clients that he obtained for them. Id. at ¶¶ 6-7. Specifically, Plaintiff states that the contract obligated Defendants to pay him the following: "100% of Temenos'[s] finder's fees for all amounts generated by Plaintiff related to the Mutualink Round B offering"; "40% of Defendants' fees from all client accounts he generated for Defendants' business"; and "50% of all commissions paid to Defendants for Life Insurance Policies and/or Annuities sourced by Plaintiff." See id. at ¶¶ 8, 11-12.

Plaintiff asserts that Defendants have nevertheless failed to pay him $18,175 in finder's fees, $40,000 of the fees on client accounts, and the commissions for the sales of multiple

AO 72A
(Rev. 8/82)

life-insurance policies and two annuities. See id. at ¶¶ 8, 11, 13. According to Plaintiff, "Defendants have recognized their obligation to pay Plaintiff these monies but have refused to do so," id. at ¶ 9, "instead unilaterally claiming to have changed the terms of the contract they entered into with Plaintiff," id. at ¶ 15.

### PROCEDURAL BACKGROUND

On May 1, 2015, Plaintiff filed suit against Defendants in the State Court of Glynn County. See generally id. In the Complaint, Plaintiff claims that Defendants breached the alleged verbal employment contract, breached their duties of good faith and fair dealing, and acted willfully and maliciously and without justification in doing so. See id. at ¶¶ 15–17. Plaintiff seeks damages from Defendants in the amount of $108,175, plus commissions for the life-insurance policies and annuities, as well as punitive damages, attorney's fees, costs, and expenses of this action. Id. at ¶¶ a–d.

Plaintiff attempted to effect service of the Complaint and Summons upon Temenos through its registered agent, Taylor, at the Temenos office in Georgia; however, a Return of Service dated May 14, 2015, shows that Temenos was not served, because Taylor could not be found within the State of Georgia after a diligent search. Dkt. No. 5, Ex. B. Plaintiff attempted to serve Taylor on June 11, 2015, by leaving copies of the

Complaint and Summons at his residence in Connecticut. Id. at

Ex. C. However, according to Taylor, he has both a home and an

office on his property, and Plaintiff left the requisite

materials in the crack of the office door. Id. at Ex. A

("Taylor Aff."), ¶¶ 5-6.

On July 13, 2015, Taylor filed a Notice of Removal of the

state-court action to this Court, on the basis of diversity

jurisdiction. Dkt. No. 1, pp. 1-4 ("Notice of Removal"), pt. B.

Along with the Notice of Removal, Taylor filed the Motion to

Dismiss that is now pending before the Court. Dkt. No. 5. As

discussed more fully below, Taylor challenges Plaintiff's

service of process and this Court's jurisdiction over him. Id.

The next day—July 14, 2015—Plaintiff sought to serve

Temenos through Georgia's Secretary of State, and Temenos

received such service on July 20, 2015. Dkt. No. 25, Ex. A.

Temenos then filed an Answer in this Court on August 4, 2015.

Dkt. No. 12. On August 8, 2015, Plaintiff re-served Taylor by

delivering the Complaint and Summons to him personally at his

home in Connecticut. Dkt. No. 15. Plaintiff then filed the

instant Motion to Remand on September 10, 2015, seeking to have

this case returned to the State Court of Glynn County on the

basis of improper removal. Dkt. No. 25.

## DISCUSSION

Although Taylor's Motion to Dismiss (dkt. no. 5) predates the filing of Plaintiff's Motion to Remand (dkt. no. 25), the Court's ruling on the issue of remand will dictate whether the Court should decide Taylor's pending dispositive Motion or leave it for resolution in state court. The Court thus addresses Plaintiff's Motion to Remand before turning to Taylor's Motion to Dismiss.

## I. Plaintiff's Motion to Remand (Dkt. No. 25)

Plaintiff moves to remand this case to state court on the basis that Temenos never joined in or consented to Taylor's Notice of Removal, as required by statute. Dkt. No. 25 (citing 28 U.S.C. § 1446(b)). Defendants oppose Plaintiff's Motion on the grounds that it is untimely and lacks merit. Dkt. No. 28, pp. 2-7. Specifically, Defendants argue that Taylor's removal of the state action to this Court was proper for three alternative reasons: (1) the statutory consent rule on which Plaintiff relies is inapplicable in diversity actions; (2) even if the rule does apply, it did not require that the later-served Temenos consent to removal after the fact; and (3) Temenos effectively consented to removal by filing an Answer in this Court. Id. at pp. 3-7.

**A. Timeliness of Plaintiff's Motion**

Pursuant to 28 U.S.C. § 1447 ("Section 1447"), a party seeking to remand a case based on any defect other than a lack of subject-matter jurisdiction must file a motion within thirty days after the filing of the removal notice.

In the case at bar, Taylor filed a Notice of Removal on July 13, 2015. <u>See</u> Notice of Removal. Accordingly, Section 1447 required that Plaintiff file any motion to remand on the basis of a procedural infirmity, such as a lack of consent, within the subsequent thirty-day period ending on August 12, 2015. Because Plaintiff waited to do so until September 10, 2015—fifty-nine days after the filing of the Notice of Removal—Plaintiff's Motion is untimely and must be denied.

Plaintiff maintains, however, that the statutory thirty-day deadline should not apply in cases involving a defendant served after removal, and that the rule should instead provide "that later served defendants must consent to removal once served and that once the time for them to do so has expired, [the] [p]laintiff may move to remand." Dkt. No. 30, p. 3. Notably, Plaintiff does not cite any authority for extending the thirty-day period set forth in Section 1447. Nor can Plaintiff do so, because "[f]ederal courts strictly observe the thirty-day deadline for filing motions to remand." <u>Alter v. Bell Helicopter Textron, Inc.</u>, 944 F. Supp. 531, 535 (S.D. Tex. 1996)

AO 72A
(Rev. 8/82)

(citing <u>In re Shell Oil Co.</u>, 932 F.2d 1518, 1522-23 (5th Cir. 1991)); <u>see, e.g.</u>, <u>DeWeese v. JPMorgan Chase Bank, N.A.</u>, No. 2:13-CV-00059-RWS, 2013 WL 6178546, at *3 (N.D. Ga. Nov. 25, 2013) ("Plaintiff moved for remand on April 22, 2013, 33 days after [Defendant's] March 20 removal. Therefore, Plaintiff's motion was untimely and is due to be denied.")

Moreover, Plaintiff's proposition that this deadline should be extended in cases involving later-served defendants runs directly contrary to the balance struck by the removal statutes:

> [28 U.S.C. § 1448] contemplates that after removal process or service may be completed on defendants who had not been served in the state proceeding. The right which the statute gives to such a defendant to move to remand the case confers no rights upon a plaintiff. 28 U.S.C. § 1448.
>
> . . . .
>
>
> In <u>Hutchins v. Priddy</u>, 103 F. Supp. 601 (W.D. Mo. 1952), the court stated: "When the case removed under [28 U.S.C. § 1448] reaches the federal court, process and service thereof may be completed against those defendants not before the court. Any defendant so subsequently served may move to remand the case to the state court, but a plaintiff may not do so if jurisdiction of the United States District Court is established over the action." 103 F. Supp. at 607; <u>see</u> 1A Moore's <u>Federal Practice</u> ¶ 0.168 [3.-5-5] in which the author concludes that "[t]his case reaches a sound result."

<u>Lewis v. Rego Co.</u>, 757 F.2d 66, 69 & n.3 (3d Cir. 1985) (footnote omitted).

As such, Plaintiff was bound to comply with the statutory thirty-day window for filing his remand Motion. Because Plaintiff's Motion comes significantly after that timeframe, it is untimely and must be denied.

## B. Propriety of Removal

Even if it had been timely, Plaintiff's Motion would be due to be denied, because Taylor's removal of this action was procedurally proper.

28 U.S.C. § 1441(a) ("Section 1441(a)") provides that an action filed in state court may be removed to federal district court if the case could have been brought in federal district court originally. See 28 U.S.C. § 1441(a) (requiring that the case be one "of which the district courts of the United States have original jurisdiction"). A federal district court has original jurisdiction "over all civil actions where the amount in controversy exceeds $[75,000] and the action is between the citizens of different states." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998) (citing 28 U.S.C. § 1332(a)(1)). Importantly, "[d]iversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." Id. (citing Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1355 (11th Cir. 1996)).

A defendant seeking to remove an action on the basis of diversity must satisfy certain procedural requirements. For

example, the "forum-defendant rule" set forth in 28 U.S.C. §
1441(b) ("Section 1441(b)") states that an action otherwise
removable on diversity grounds "is not removable if any of the
'parties in interest properly joined and served as defendants is
a citizen of the State in which such action is brought.'"
Goodwin v. Reynolds, 757 F.3d 1216, 1218 (11th Cir. 2014)
(emphasis in original) (quoting 28 U.S.C. § 1441(b)).
Additionally, the so-called "unanimous consent rule" under 28
U.S.C. § 1446(b)(2)(A) mandates that "all defendants who have
been properly joined and served must join in or consent to the
removal of the action."

Upon the removal of an action to federal district court, 28
U.S.C. § 1447(c) "implicitly recognizes two bases upon which a
district court may . . . order a remand: when there is (1) a
lack of subject matter jurisdiction or (2) a defect other than a
lack of subject matter jurisdiction." Hernandez v. Seminole
Cty., 334 F.3d 1233, 1236-37 (11th Cir. 2003) (quoting Snapper,
Inc. v. Redan, 171 F.3d 1249, 1252-53 (11th Cir. 1999)).[1]  A

_____

[1]  This statute states, in relevant part:

> A motion to remand the case on the basis of any defect
> other than lack of subject matter jurisdiction must be made
> within 30 days after the filing of the notice of removal
> under section 1446(a).  If at any time before final
> judgment it appears that the district court lacks subject
> matter jurisdiction, the case shall be remanded.  An order
> remanding the case may require payment of just costs and

"defect other than a lack of subject matter jurisdiction" might include noncompliance with one of the aforementioned procedural requirements for removal. See id. (quoting Snapper, Inc., 171 F.3d at 1252-53). The removing party bears the burden of establishing that the case was properly removed. Thalacker v. Concessions Int'l, LLC, No. 1:06CV2685 WSD, 2007 WL 521902, at *2 (N.D. Ga. Feb. 15, 2007) (citing Lampkin v. Media Gen., Inc., 302 F. Supp. 2d 1293, 1294 (M.D. Ala. 2004)).

Here, there is no dispute that this case falls within the Court's diversity jurisdiction. See generally Dkt. Nos. 25, 28. The parties agree that Plaintiff is a citizen of Georgia, Defendants are citizens of Connecticut, and the amount in controversy is in excess of $108,175. Notice of Removal, pt. B; Compl., ¶¶ 1-3, a. Rather, at issue is whether a procedural defect in removal owing to a lack of unanimous consent warrants remand.

Contrary to Defendants' argument, the unanimous consent rule applies in this case. Defendants emphasize that the unanimous consent rule purports to apply only to actions removed pursuant to Section 1441(a), not actions removed on the basis of diversity jurisdiction under Section 1441(b). Dkt. No. 28, p.

---

any actual expenses, including attorney fees, incurred as a result of the removal.

28 U.S.C. § 1447(c).

10

4.  Defendants err in viewing Section 1441(b) as a separate statutory ground for removal.  Section 1441(a) contains the general rule that cases within the original jurisdiction of a district court (i.e., cases involving a federal question or diversity) are removable, while Section 1441(b) merely sets forth additional requirements applicable when it is a diversity case that is removed pursuant to Section 1441(a).  See 28 U.S.C. § 1441(a)-(b).

As a result, "[t]his 'rule of unanimity' applies regardless of whether federal subject matter jurisdiction is based on diversity or federal question." Novick v. Bankers Life Ins. Co. of N.Y., 410 F. Supp. 2d 98, 100 (E.D.N.Y. 2006) (citing Ell v. S.E.T. Landscape Design, Inc., 34 F. Supp. 2d 188, 193 (S.D.N.Y. 1999)), vacated on other grounds, 450 F. Supp. 2d 196 (E.D.N.Y. 2006); accord Fiene v. Standard Ins. Co., No. CIV. A. 01-2313-GTV, 2001 WL 1224144, at *1 (D. Kan. Oct. 9, 2001) (citing McShares, Inc. v. Barry, 979 F. Supp. 1338, 1342 (D. Kan. 1997)); see also DeWeese, 2013 WL 6178546, at *6 (applying the unanimous consent rule where removal was based on diversity). Thus, the unanimous consent rule applies to Taylor's removal of this case on diversity grounds.

Nevertheless, Defendants show that the unanimity requirement was satisfied here.  The unanimous consent rule states that all defendants that have been properly joined and

11

served in an action must join in or consent to the removal of that action to federal court. 28 U.S.C. § 1446(b)(2)(A). The parties agree that when Taylor filed the Notice of Removal on July 13, 2015, Temenos had not been properly joined and served in the state-court action. See Dkt. No. 25, pp. 1, 6; Dkt. No. 28, p. 3. As a result—and as Plaintiff does not appear to dispute—the unanimity rule was not frustrated by Temenos's failure to join in the removal petition at that time.

Nor did the rule require that Temenos take any action upon receiving service on July 20, 2015, as Plaintiff contends, see dkt. no. 25. Under the statutory heading "Procedure for Removal of Civil Actions," the unanimous consent rule focuses on "[w]hen a civil action is removed" and requires the joinder or consent of "all defendants who have been properly joined and served" as of that time. See 28 U.S.C. § 1446(b)(2)(A). The rule addresses neither procedure nor service on a defendant after removal, as these matters are instead covered in 28 U.S.C. §§ 1447 and 1448, respectively. In fact, 28 U.S.C. § 1448 specifically provides that a defendant that receives service after removal may move to remand the case, but makes no mention of any affirmative filing obligation in the event that the defendant does not wish to obtain a remand.

Moreover, the purpose of the unanimous consent rule "is to promote unanimity among the served defendants 'without placing

undue hardships on subsequently served defendants.'" Hooper v.
Albany Int'l Corp., 149 F. Supp. 2d 1315, 1319 n.2 (M.D. Ala.
2001) (emphasis in original) (quoting Getty Oil v. Ins. Co. of
N. Am., 841 F.2d 1254, 1263 (5th Cir. 1988)). Accordingly,
"[s]ubsequently served defendants may either 'accept the removal
or exercise their right to choose the state forum by making a
motion to remand.'" Id. (quoting Getty Oil, 841 F.2d at 1263).
A later-served defendant that accepts the removal, however, need
not do so by expressly joining in or giving its consent after
the fact. See, e.g., Shaw v. Dow Brands, Inc., 994 F.2d 364,
369 (7th Cir. 1993) ("[Defendant] was not served until January
21, 1992, or nearly a month after the removal petition was filed
on December 23, 1991, so that its consent was not needed."
(citing Richards v. Harper, 864 F.2d 85, 87 (9th Cir. 1988), and
P.P. Farmers' Elevator Co. v. Farmers Elevator Mut. Ins. Co.,
395 F.2d 546, 547-48 (7th Cir. 1968))), abrogated on other
grounds by Carroll v. Stryker Corp., 658 F.3d 675 (7th Cir.
2011); Lewis v. Rego Co., 757 F.2d 66, 69 (3d Cir. 1985) ("[T]he
removal statute contemplates that once a case has been properly
removed the subsequent service of additional defendants who do
not specifically consent to removal does not require or permit
remand on a plaintiff's motion."); McArthur v. Wong, No. 07-
0234-M, 2007 WL 4570327, at *1 n.3 (S.D. Ala. Dec. 20, 2007)
("[Defendant] had not been served at the time that this action

13

was removed, so it was unnecessary for him to join in the removal."); <u>Cramer v. Devera Mgmt. Corp.</u>, No. 04-2012-JWL, 2004 WL 1179375, at *1-2 (D. Kan. May 27, 2004) (denying the plaintiff's motion to remand grounded in the unanimity rule, because the defendant, who was served after removal and never filed any notice consenting to removal, was not required to join in or consent to the removal).

Because Temenos was served after Taylor removed the case to this Court, it was under no obligation to consent to the removal at any time. Defendants succeed in demonstrating that the removal of this action was in keeping with the unanimous consent rule and thus was procedurally proper. Consequently, Plaintiff's Motion to Remand is **DENIED**.

## II. Taylor's Motion to Dismiss (Dkt. No. 5)

Taylor moves to dismiss Plaintiff's claims against him, arguing that Plaintiff's attempt to serve him with process on June 11, 2015, did not comport with Georgia law. Dkt. No. 5, pp. 2, 7-8 (citing O.C.G.A. §§ 9-10-94, 9-11-4(e)(7)). Taylor emphasizes that as of the filing of his Reply brief on August 7, 2015, "Plaintiff ha[d] not made any additional service attempt." Dkt. No. 13, pp. 2-3. As further grounds for dismissal, Taylor contends that Plaintiff's Complaint fails to plead facts establishing this Court's personal jurisdiction over him as a nonresident, because "[t]here is no allegation that . . . Taylor

personally took part in the breach" or "personally participated in any wrongdoing." Dkt. No. 5, p. 5. Taylor further asserts that he does not have sufficient contacts with the State of Georgia to invoke the Court's nonresident jurisdiction. Id. at pp. 3-6.

In support of his Motion, Taylor submits an affidavit stating, in relevant part:

> 1.    . . . I am a resident of the [S]tate of Connecticut.
>
> . . . .
>
> 8.    Temenos . . . is a Connecticut corporation licensed to do business in Georgia.
>
> 9.    I am . . . the Chief Executive Officer of Temenos . . . .
>
> 10.   Upon information and belief, I negotiated the terms of [Plaintiff's] employment with Temenos . . . in 2010. All negotiations and discussion occurred in the [S]tate of New Hampshire. Any employment agreement between [Plaintiff] and Temenos . . . would have been entered into in the [S]tate of New Hampshire.
>
> 11.   I do not personally own any real property in Georgia.
>
> 12.   I did not personally enter into a verbal employment agreement with [Plaintiff] . . . .

Taylor Aff., ¶¶ 1, 8-12.

Plaintiff counters Taylor's contentions regarding service by stating that he served Taylor on June 11, 2015, in the proper manner under Connecticut law. Dkt. No. 8, p. 3 (citing Conn. Gen. Stat. § 52-57(a)). Nevertheless, Plaintiff argues that, at

AO 72A
(Rev. 8/82)

the time of briefing this issue, he could still perfect service
on Taylor in accordance with the Federal Rules of Civil
Procedure, and requests the opportunity to do so.  Id. at pp. 2-
3 (quoting Fed. R. Civ. P. 4(m)).  As to personal jurisdiction,
Plaintiff asserts that the Complaint sets forth allegations of
wrongdoing against both Defendants, and that Taylor's denial of
personal involvement bears on the issue of liability and thus is
a matter for summary judgment.  Id. at pp. 7-10.  Plaintiff
further contends that Taylor has sufficient contacts with the
State of Georgia to bring him within this Court's jurisdiction,
based on his "long course of dealing and business activities" in
Georgia that directly gives rise to this lawsuit.  Id. at pp. 3-
7.

Plaintiff attaches to his Response a copy of Temenos's
filing with the Georgia Secretary of State listing Taylor as its
registered agent in the State.  Id. at Ex. B.  Plaintiff also
puts forth an affidavit, in which he attests to the following:

  3.  While the bulk of negotiations
      between . . . Taylor and myself regarding the
      terms of the agreement took place while we were
      on vacation in New Hampshire, my employment was
      in the State of Georgia.  Although I had business
      prospects in other states, all of my work for
      Temenos was from the Georgia office or from my
      home in Georgia.

  4.  Temenos has maintained an office in St. Simons
      Island, [Glynn County,] GA[,] continuously for
      the last 5 years. . . . Taylor typically spent at
      least two months out of each year that I was

AO 72A
(Rev. 8/82)

working at Temenos on St. Simons Island working out of the St. Simons Island office.

. . . .

6. In addition to the time . . . Taylor spent physically doing business in the St. Simons Island office, he spoke to me via telephone, e-mailed me and otherwise supervised and directed my work at Temenos on a daily basis.

7. . . . Taylor personally ran Temenos . . . in both Connecticut and Georgia as its CEO and made all significant business decisions for both offices. . . . Taylor was the only person with authority to make personnel decisions regarding myself and he unilaterally made the decision to refuse to pay me my earned commissions and stated that he had decided to change my pay structure after those commissions had already been earned.

Id. at Ex. C ("Pl.'s Aff."), ¶¶ 3-7.

**A. Legal Standards**

A plaintiff's complaint must set forth "a short and plain statement of the grounds for the court's jurisdiction," Fed. R. Civ. P. 8(a)(1), and be properly served along with a summons upon the defendant, Fed. R. Civ. P. 4(c). As such, the defendant may respond to the Complaint by moving for its dismissal based on a lack of personal jurisdiction or insufficient service of process. Fed. R. Civ. P. 12(b)(2),(5).

These grounds for dismissal share the same standards of proof, as proper service of process is a component of personal jurisdiction. Kammona v. Onteco Corp., 587 F. App'x 575, 578 (11th Cir. 2014) (citing Lowdon PTY Ltd. v. Westminster

Ceramics, LLC, 534 F. Supp. 2d 1354, 1360 (N.D. Ga. 2008), and
Baragona v. Kuwait Gulf Link Transp. Co., 594 F.3d 852, 855
(11th Cir. 2010)).  When a district court does not conduct an
evidentiary hearing, the plaintiff need only allege sufficient
facts in the complaint to establish a prima facie case of
personal jurisdiction over a nonresident defendant.  Cable/Home
Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th
Cir. 1990) (citing Morris v. SSE, Inc., 843 F.2d 489, 492 (11th
Cir. 1988), and Delong Equip. Co. v. Wash. Mills Abrasive Co.,
840 F.2d 843, 845 (11th Cir. 1988)).

However, if the defendant challenges personal jurisdiction
with affidavit evidence in support of his position, "the burden
traditionally shifts back to the plaintiff to produce evidence
supporting jurisdiction."  Diamond Crystal Brands, Inc. v. Food
Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010)
(quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th
Cir. 2009)).  The plaintiff must "substantiate the
jurisdictional allegations in the complaint by affidavits or
other competent proof, and not merely reiterate the factual
allegations in the complaint."  Polski Linie Oceaniczne v.
Seasafe Transp. A/S, 795 F.2d 968, 972 (11th Cir. 1986) (quoting
Bloom v. A.H. Pond Co., 519 F. Supp. 1162, 1168 (S.D. Fla.
1981)).

AO 72A
(Rev. 8/82)

The court, in turn, must accept the facts in the
plaintiff's complaint as true, to the extent that they remain
uncontroverted by the defendant's affidavits.  Cable/Home
Commc'n Corp., 902 F.2d at 855.  In addition, "[w]here the
plaintiff's complaint and supporting evidence conflict with the
defendant's affidavits, the court must construe all reasonable
inferences in favor of the plaintiff."  Diamond Crystal Brands,
Inc., 593 F.3d at 1257 (quoting Meier ex rel. Meier v. Sun Int'l
Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)).

**B. Sufficiency of Service of Process**

Federal Rule of Civil Procedure 4(m) provides, in part, as
follows:

> If a defendant is not served within 120 days after the
> complaint is filed, the court—on motion or on its own
> after notice to the plaintiff—must dismiss the action
> without prejudice against that defendant or order that
> service be made within a specified time.  But if the
> plaintiff shows good cause for the failure, the court
> must extend the time for service for an appropriate
> period.[2]

Here, Taylor moves for dismissal based on Plaintiff's
allegedly insufficient service on June 11, 2015, see dkt. no. 5,
p. 2, and failure to make any further attempt to perfect the
same, dkt. no. 13, pp. 2-3.  While these averments may have been
true at the time that Taylor filed his Reply in support of this

---

[2]  A recent amendment to this rule shortened the 120-day period for
service to only 90 days; however, this amendment went into effect on
December 1, 2015, and thus does not apply here.  See Fed. R. Civ. P. 4
advisory committee's note.

Motion on August 7, 2015, <u>see</u> dkt. no. 13, Plaintiff filed the Complaint on May 1, 2015, <u>see</u> compl., and thus had until the expiration of the 120-day period on August 29, 2015, to perfect service on Taylor. The docket of this case reflects that Plaintiff did, in fact, re-serve Taylor on August 8, 2015. Dkt. No. 15 (Return of Service showing personal service upon Taylor at his home in Connecticut). Significantly, Taylor made no effort to amend or supplement his briefing on the issue of service, and has not otherwise contested the validity of the August 8, 2015, service. As a result, it appears that the portion of Taylor's Motion seeking dismissal on this basis must be **DISMISSED as moot.**

### C. Personal Jurisdiction

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." <u>United Techs. Corp.</u>, 556 F.3d at 1274 (citing <u>Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.</u>, 421 F.3d 1162, 1166 (11th Cir. 2005)).

#### 1. Georgia's Long-Arm Statute

In construing a state long-arm statute in a personal jurisdiction analysis, the court must interpret the statute as

AO 72A
(Rev. 8/82)

would the state's Supreme Court.  _See_ _id._  The relevant portions

of Georgia's long-arm statute state:

> A court of this state may exercise personal
> jurisdiction over any nonresident or his or her
> executor or administrator, as to a cause of action
> arising from any of the acts, omissions, ownership,
> use, or possession enumerated in this Code section, in
> the same manner as if he or she were a resident of
> this state, if in person or through an agent, he or
> she:
>
> (1) Transacts any business within this state . . . .

O.C.G.A. § 9-10-91.

To exercise personal jurisdiction over a nonresident who

transacts business within Georgia, the following requirements

must be met:

> first, the nonresident must have purposefully done an
> act or consummated a transaction in Georgia; second,
> the cause of action must arise from or be connected
> with such act or transaction; and third, the exercise
> of jurisdiction by the courts of this state must not
> offend traditional fairness and substantial justice.

Gateway Atlanta Apartments, Inc. v. Harris, 660 S.E.2d 750, 757

(Ga. Ct. App. 2008) (citing Robertson v. CRI, Inc., 601 S.E.2d

163, 163 (Ga. Ct. App. 2004)).

Significantly, Georgia courts broadly interpret the first

prong—a purposeful act or consummation of a transaction in

Georgia—as neither requiring the nonresident defendant's

physical presence in Georgia nor minimizing the importance of

his intangible contacts with this State.  Innovative Clinical &

AO 72A
(Rev. 8/82)

Consulting Servs., LLC v. First Nat'l Bank of Ames, 620 S.E.2d
352, 355 (Ga. 2005). As such, a court must consider the
nonresident defendant's "mail, telephone calls, and other
'intangible' acts, though occurring while the defendant is
physically outside of Georgia." Diamond Crystal Brands, Inc.,
593 F.3d at 1264 (citing Innovative Clinical & Consulting
Servs., LLC, 620 S.E.2d at 355-56); see also Burger King Corp.
v. Rudzewicz, 471 U.S. 462, 476 (1985) ("[I]t is an inescapable
fact of modern commercial life that a substantial amount of
business is transacted solely by mail and wire communications
across state lines, thus obviating the need for physical
presence within a State in which business is conducted."); Aero
Toy Store, LLC v. Grieves, 631 S.E.2d 734, 739 (Ga. Ct. App.
2006) ("[A] single event may be a sufficient basis for the
exercise of long arm jurisdiction if its effects within the
forum are substantial enough even though the nonresident has
never been physically present in the state." (citing
Shellenberger v. Tanner, 227 S.E.2d 266, 266 (Ga. Ct. App.
1976))).

The second prong of the personal-jurisdiction analysis adds
that the act or transaction must give rise or have some
connection to the cause of action. Gateway Atlanta Apartments,
Inc., 660 S.E.2d at 757. The first and second prongs thus
determine whether the nonresident has established minimum

22

contacts with the State. Id. By contrast, the "due process" prong "requires that the nonresident have performed purposeful acts to tie itself to Georgia, and these minimum contacts 'may not be merely random, fortuitous, or attenuated.'" Id. (quoting Home Depot Supply v. Hunter Mgmt., 656 S.E.2d 898, 898 (Ga. Ct. App. 2008)).

In the present matter, Plaintiff adequately pleads a prima facie case of personal jurisdiction over Taylor in the Complaint and substantiates the same through affidavit. See Compl., ¶¶ 4-6, 15; Pl.'s Aff., ¶¶ 3-4, 6. The Complaint alleges that both Defendants have maintained an office in Glynn County, Georgia; entered into an employment contract with Plaintiff, pursuant to which Plaintiff worked as a financial advisor; refused to make payments owed to Plaintiff; and unilaterally claimed to have changed the contract terms. Compl., ¶¶ 4-6, 15. Although Taylor submits affidavit evidence denying having personally entered into any employment contract with Plaintiff on which he could be liable for breach, Taylor aff., ¶ 12, the Court must give greater weight, at this stage, to Plaintiff's sworn statements that Taylor personally ran the company, made all personnel and other substantial business decisions in both offices, and unilaterally made the decision to withhold payments to Plaintiff that gives rise to the instant breach claims, see Pl.'s aff., ¶ 7. See Delong Equip. Co., 840 F.2d at 845

AO 72A
(Rev. 8/82)

("'[W]hen there is a battle of affidavits placing different constructions on the facts, the court is inclined to give greater weight, in the context of a motion to dismiss, to the plaintiff's version' particularly when 'the jurisdictional questions are apparently intertwined with the merits of the case.'" (alteration omitted) (quoting Psychological Res. Support Sys., Inc. v. Gerleman, 624 F. Supp. 483, 486-87 (N.D. Ga. 1985))).

Furthermore, while Taylor's affidavit claims that the negotiating and contracting process took place in New Hampshire, Taylor aff., ¶ 10—and Plaintiff concedes this fact, see Pl.'s aff., ¶ 3—Plaintiff's affidavit shows that the contract was for employment at the Temenos office in Georgia, id. at ¶ 3. Importantly, Taylor affies that he personally does not own real property in Georgia, but does not discuss the extent of his business activities at the Temenos office in Georgia or his communications with the employees there. See Taylor Aff., ¶ 11. On the other hand, Plaintiff's affidavit states that while he was working at the Georgia office, Taylor was also at that office doing business for approximately two months of each year and otherwise spoke with Plaintiff via telephone and e-mail, supervised him, and directed his work on a daily basis. Pl.'s Aff., ¶¶ 4-6.

AO 72A
(Rev. 8/82)

This evidence supports a finding that Taylor committed purposeful acts in Georgia by serving as the sole decision maker and supervisor of Temenos's Georgia office—both while physically present at that office for extended periods of time and through electronic correspondence with that office from out of State. Aside from their initial negotiations in New Hampshire, nothing suggests that Taylor communicated with Plaintiff other than while working alongside him at the Georgia office and calling and e-mailing him on a daily basis. As a result, there is a sufficient basis upon which to conclude that the present cause of action—alleging that Defendants have refused to make payments to Plaintiff and claimed to have modified the contract terms, see compl., ¶ 15—directly arises from and is connected to Taylor's purposeful acts in this State.

Far from "merely random, fortuitous, or attenuated," these purposeful acts occurred regularly—even daily—over the course of five years. See Gateway Atlanta Apartments, Inc., 660 S.E.2d at 757 (quoting Home Depot Supply, 656 S.E.2d at 898). Consequently, Taylor's ties with the State of Georgia are such that the exercise of personal jurisdiction over him in this case will not offend traditional notions of fairness and substantial justice under Georgia law. Thus, Plaintiff has sustained his burden of proving that all three prongs of the Georgia Long-Arm Statute are satisfied in this case.

AO 72A
(Rev. 8/82)

## 2. Due Process Under the Fourteenth Amendment

Federal case law requires that a federal court sitting in diversity undertake a Fourteenth Amendment analysis in addition to applying the forum state's long-arm statute. United Techs. Corp., 556 F.3d at 1274. Although Georgia already requires a due process analysis in applying its long-arm statute, see Gateway Atlanta Apartments, Inc., 660 S.E.2d at 757, these two inquiries are not "one and the same," Diamond Crystal Brands, 593 F.3d at 1261-63. Thus, a court must conduct a constitutional analysis independent of the statutory long-arm assessment to determine whether personal jurisdiction over a nonresident defendant is appropriate. See Diamond Crystal Brands, 593 F.3d at 1263.

As the Eleventh Circuit has observed,

> The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments imposed by foreign sovereigns. The heart of this protection is fair warning—the Due Process Clause requires "that the defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there." Therefore, states may exercise jurisdiction over only those who have established "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

Id. at 1267 (alterations in original) (citations omitted) (citing Burger King Corp., 471 U.S. at 471-72; then quoting id. at 474; then quoting Helicopteros Nacionales de Colombia S.A. v.

AO 72A
(Rev. 8/82)

_Hall_, 466 U.S. 408, 414 (1984)). Thus, personal jurisdiction comports with federal due process when the nonresident defendant (1) has purposefully established minimum contacts with the forum state, and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. _Delong Equip. Co._, 840 F.2d at 853.

### i. Minimum Contacts with the State of Georgia

Three inquiries inform the minimum contacts analysis:

> First, the plaintiff's cause of action must arise out of, or relate to, the nonresident defendant's contacts with the forum state. Second, the contacts must show that the nonresident defendant purposefully availed itself of the privilege of conducting activities within the forum state. Third, the defendant's contacts must demonstrate that the nonresident could reasonably anticipate being haled into court in the forum.

_Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa_, 245 F. Supp. 2d 1248, 1255 (N.D. Ga. 2002) (citations omitted) (citing _Vermeulen v. Renault, U.S.A., Inc._, 985 F.2d 1534, 1546 (11th Cir. 1993)).

In this case, Taylor's contacts with the State of Georgia meet the threshold of minimum contacts required under the Fourteenth Amendment. First, as discussed above, Plaintiff's cause of action arises out of or relates to Taylor's contacts with Georgia. Plaintiff claims that Defendants have breached their employment contract by refusing to make payments due thereunder and purporting to have changed the contract terms.

See Compl., ¶ 15.  Plaintiff's affidavit further alleges that Taylor was the decision maker at Temenos, and that Taylor communicated with him either in person at the Georgia office or by calling or sending e-mails to him at that office.  Pl.'s Aff., ¶¶ 4, 6.  Plaintiff's claim of breach thus appears to be grounded in or otherwise relating to Taylor's actions or communications with him in Georgia.

Second, Plaintiff's Complaint and supporting affidavit suggest that Taylor purposefully availed himself of the privilege to conduct business activities in the State of Georgia on a continuing basis.  The Complaint states that Taylor and Temenos maintained an office in Georgia, compl., ¶ 4, and the affidavit alleges that Taylor intentionally and consistently did business out of that office for two-month periods each year and contacted Plaintiff or otherwise directed his work at that office on a daily basis, Pl.'s aff., ¶¶ 4, 6.  If true, Taylor would have purposefully taken advantage of the opportunity to do business Georgia.

Third, Taylor's contacts with the State of Georgia are such that he should have anticipated being haled into court in Georgia.  While jurisdiction is not proper when it is the result of "'random,' 'fortuitous,' or 'attenuated' contacts" or the "unilateral activity of another party or a third person," personal jurisdiction arises "where the contacts proximately

AO 72A
(Rev. 8/82)

result from actions by the defendant _himself_ that create a 'substantial connection' with the forum State." _Burger King Corp._, 471 U.S. at 475-76 (emphasis in original) (first quoting _Keeton v. Hustler Magazine, Inc._, 465 U.S. 770, 774 (1984), and _World-Wide Volkswagen Corp. v. Woodson_, 444 U.S. 286, 299 (1980); then quoting _Helicopteros Nacionales de Colombia, S.A._, 466 U.S. at 417; then quoting _McGee v. Int'l Life Ins. Co._, 355 U.S. 220, 223 (1957)). Taylor worked out of Temenos's Georgia office for approximately two months each year and contacted and supervised that office on a daily basis, thereby establishing a substantial personal connection with Georgia. Because Taylor availed himself of the opportunity to engage in business through a Georgia-based office, and thereby enjoy the benefits and protections of Georgia's laws, it is thus "presumptively not unreasonable to require him to submit to the burdens of litigation in [Georgia] as well." _See id._ at 476.

ii. _Fair Play and Substantial Justice_

Once it is shown that the defendant has purposefully established minimum contacts in the forum state, the defendant "must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." _Diamond Crystal Brands, Inc._, 593 F.3d at 1267 (quoting _Burger King_, 471 U.S. at 477). The analysis requires that a court look to "the burden on the defendant, the forum

State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." Id. at 1274 (quoting Burger King, 471 U.S. at 477).

In relying on only his status as a Connecticut resident and his denial of personal involvement in the contract and breach at issue, see dkt. no. 5, pp. 5-6, Taylor fails to suggest—much less make a compelling case—that exercising jurisdiction would be contrary to traditional notions of fair play and substantial justice. While perhaps Taylor shows that it would be burdensome on him, as a Connecticut resident, to litigate in this Court, see Taylor aff., ¶ 1, Plaintiff's affidavit alleges that Taylor nevertheless spends a significant amount of time in Georgia, Pl.'s aff., ¶ 4, and thereby demonstrates that traveling to Georgia to litigate this case will not inconvenience Taylor as much as he suggests.

Moreover, as Plaintiff is a Georgia resident and suffered the alleged injuries in this State, Georgia has an interest in overseeing the resolution of this case and it would be in Plaintiff's interest for it to do so. Finally, it is in the interest of justice that Plaintiff's claims against Taylor be

AO 72A
(Rev. 8/82)

resolved in an efficient manner alongside those against Temenos involving the same underlying events that are alleged to have occurred.

On balance, the slight inconvenience to Taylor in litigating in Georgia does not outweigh these considerations. This Court's exercise of personal jurisdiction over Taylor will be consistent with traditional notions of fair play and substantial justice and thus will not implicate Taylor's Fourteenth Amendment due process rights. Because the requirements of both the Georgia Long-Arm Statute and Fourteenth Amendment Due Process Clause are met, personal jurisdiction over Taylor is appropriate in this case. Taylor's Motion to Dismiss is, therefore, **DENIED** to the extent that it is based on jurisdictional grounds.

### CONCLUSION

In light of the foregoing, Plaintiff's Motion to Remand (dkt. no. 25) is hereby **DENIED**. Additionally, Taylor's Motion to Dismiss (dkt. no. 5) is **DISMISSED in part** and **DENIED in part** as follows: it is **DISMISSED as moot** insofar as it seeks a dismissal of Plaintiff's Complaint for insufficient service process, and it is **DENIED** to the extent that it requests dismissal for lack of personal jurisdiction.

**SO ORDERED**, this 29TH day of January, 2016.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA